UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DOUGLAS JENDRAS,

                                  Plaintiff,

-against-                                    **COMPLAINT AND JURY DEMAND**

ABOVENET, INC.
                                  Defendant.
------------------------------------------------------------X

'11 CIV 5409

JUDGE KARAS

Douglas Jendras, as and for his Complaint, alleges as follows:

### JURISDICTION AND VENUE

1.    This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because of diversity of citizenship and because the value of the rights in controversy exceeds $75,000.00.

2.    Venue is proper in this judicial district under 28 U.S.C. 1391 (a) because the claim arose in this judicial district and the defendant's principal place of business is situated within this judicial district.

### THE PARTIES

3.    Plaintiff, Douglas Jendras ("Mr. Jendras" or "Plaintiff"), is a citizen of the State of Connecticut.

4.    Defendant, AboveNet, Inc. ("AboveNet" or "Defendant"), is a Delaware corporation which maintains its principal place of business in Westchester County in the State of New York.

## Factual Background

5. AboveNet is engaged in the business of selling, installing and maintaining fiber optic networks that are widely used by businesses operating in the financial services, media, health care, and retail markets and also by government. These fiber optic networks enable businesses and governmental agencies to receive and transmit an enormous volume of data at rapid speed.

6. AboveNet's customers are located throughout the United States and Europe.

7. In 2000, Mr. Jendras was recruited by William LaPerch, the current CEO of AboveNet, to join AboveNet's predecessor company, Metro Media Fiber Network ("MFN"), as Director of Technical Support for Operations.

8. In 2002, MFN went bankrupt and, after restructuring in bankruptcy, emerged from bankruptcy in September 2003 as AboveNet.

9. AboveNet was a publicly traded company on NASDAQ until May 2009 when it was relisted on the New York Stock Exchange.

10. In or about 2004, Mr. Jendras was appointed Senior Vice President of Operations of AboveNet.

11. In the years following Mr. Jendras appointment as Senior Vice President of Operations, AboveNet was and remained a very successful and profitable company and Mr. Jendras' efforts were acknowledged by the Company as a key element of that success. He continually received extremely favorable annual reviews, annual salary increases and annual bonuses.

12. Additionally, in further recognition of his performance, Mr. Jendras received Stock Awards pursuant to AboveNet's 2008 Equity Incentive Plan ("2008 Plan"), which was created to incentivize and retain valued executives of the Company.

The September 2, 2008 Employment Agreement

13. On September 2, 2008, AboveNet entered into a new written employment agreement with Mr. Jendras for the period commencing September 2, 2008 and ending November 16, 2011 ("Employment Agreement"). The Employment Agreement established Mr. Jendras' base salary as $280,000.00.

14. Subsequent to the execution of the Employment Agreement, based on the recommendation of Mr. LaPerch, AboveNet twice increased Mr. Jendras' base salary. The most recent increase raised Mr. Jendras' salary to $295,800 effective March 1, 2011.

15. The Employment Agreement also provided that Mr. Jendras would receive an annualized bonus based on the achievement of certain earnings targets. With respect to 2010, the most recent full year of Mr. Jendras' employment, the Compensation Committee determined, after the Company had met designated earnings targets, that Mr. Jendras had earned a bonus in the amount of $205,000.00.

16. The Employment Agreement further provides that in the event Mr. Jendras' employment is terminated without cause or for good reason, Mr. Jendras is entitled to one year's base salary, any accrued but unpaid base salary, any earned but unpaid bonus, a pro-rated bonus for the year of termination, and the continuation of health and welfare benefits for twelve months.

17. "Cause" is defined in Section 6 of the Employment Agreement as any of the following events:

3

(A) fraud, misappropriation or embezzlement of funds or property by the Employee involving the Company or an Affiliated Company...

(B) the conviction of the Employee in any jurisdiction for any crime which constitutes a felony, or which constitutes a misdemeanor that involves fraud, moral turpitude or material loss to the Company or an Affiliated Company, or their respective businesses or reputations;

(C) the Employee's material misconduct in, or material neglect of, the performance of his material duties and responsibilities hereunder, or the Employee's violation of any reasonable specific directions of the Superior which directions are consistent with the provisions of this Agreement; or

(D) the Employee's material breach of this Agreement, including but not limited to the provisions set forth in Sections 7 (Confidential Information), 8 ( Restricted Covenants), 9 (Bribery, Extortion or Kickbacks) and 10 (Intellectual Property) hereof.

18.     By Amendment to the Employment Agreement effective as of January 25, 2011, the term of the Employment Agreement was extended to December 31, 2011.

The September 8, 2008 Stock Award

19.     On September 8, 2008, Mr. Jendras was granted 35,000 restricted stock units ("September 2008 Award") by the Compensation Committee, which was authorized to make such awards pursuant to the 2008 Plan.

20.     Under the terms of the September 2008 Award, 10,500 shares vested on September 8, 2009, the first anniversary of the date of the grant to Mr. Jendras. As a result of a subsequent stock split in December 2009, the remaining unvested 24,500 shares doubled to 49,000 shares with 7000 shares vesting on September 8, 2010, the second anniversary of the date of grant, and 42,000 shares scheduled to vest on September 8, 2011, the third anniversary of the date of the grant.

21. Subsequent to the Compensation Committee's decision on September 8, 2008 to issue an Award to Mr. Jendras, the terms of the grant were memorialized in a Stock Award Agreement delivered to Mr. Jendras. As confirmed by the Agreement, any unvested stock granted by the Compensation Committee pursuant to the September 2008 Award automatically vests if Mr. Jendras' employment is terminated without cause.

The December 20, 2010 Stock Award

22. On December 20, 2010, Mr. Jendras was granted 3738 stock units ("December 2010 Award") by the Compensation Committee.

23. Under the terms of the December 2010 Award, all of the 3738 shares are scheduled to vest on November 15, 2011.

24. Subsequent to the Compensation Committee's decision on December 20, 2010 to issue an additional Award to Mr. Jendras, the terms of the grant were memorialized in a Stock Award Agreement delivered to Mr. Jendras. As confirmed by the Agreement, any unvested stock granted by the Compensation Committee pursuant to the December 2010 Award automatically vests if Mr. Jendras' employment is terminated without cause.

The January 25, 2011 Stock Award

25. On January 25, 2011, the Compensation Committee made an additional Stock Award to Mr. Jendras ("January 2011 Award"). The January 2011 Award totaled 21,000 shares of stock. 14,000 shares are scheduled to vest on November 16, 2012 and 7000 shares are scheduled to vest on November 16, 2003.

26. The January 2011 Award was also memorialized and confirmed in a Stock Award Agreement delivered to Mr. Jendras on February 18, 2011. As set forth in the

5

Stock Award Agreement delivered to Mr. Jendras on February 18, 2011, like the September 2008 Award and the December 2010 Award, any unvested shares comprising the January 25, 2011 grant will vest automatically if Mr. Jendras is terminated without cause.

27. On January 28, 2011, AboveNet made a Form 8-K filing with the United States Securities and Exchange Commission in which it reported the January 2011 Stock Award made to Mr. Jendras and attached the form of the Stock Award Agreement that contained the terms of the January 2011 Award. The reported form of Agreement was the same Agreement delivered to Mr. Jendras on February 18, 2011 and contained the provision that any unvested shares would vest automatically if employment was terminated without cause.

28. On March 1, 2011, AboveNet made its Form 10-K filing with the SEC containing its annual report for the fiscal year ending December 31, 2010. In its 10-K filing, AboveNet again reported the January 25, 2011 Stock Award and the form of Agreement containing the terms of the January 25, 2011 Stock Award was again identified as the form of Agreement attached to the Form 8-K filed on January 28, 2011.

The Termination of Mr. Jendras' Employment

29. In late fall of 2010, Mr. LaPerch asked Mr. Jendras if he planned to remain at the Company when he learned that Mr. Jendras had invested in a relative's hamburger franchise. Mr. LaPerch also informed Mr. Jendras that he was considering only one internal candidate, Rajiv Datta, for possible selection as Chief Operations Officer of the Company. Mr. Jendras advised Mr. LaPerch that he planned to remain at the Company.

30. In January 2011, after Mr. Datta was selected as COO for AboveNet, Mr. LaPerch inquired if Mr. Jendras had any intention of leaving the company as a consequence of Mr. Datta's selection as the COO. Mr. Jendras again stated he intended to continue his services for the company.

31. Thereafter, by Amendment to the Employment Agreement effective as of January 25, 2011, Mr. Jendras' employment term was extended to December 31, 2011.

32. In or about February 2011, Mr. Datta advised Mr. Jendras that he would be working in AboveNet's White Plains office rather than the office situated in Mahwah, New Jersey which is where he had previously been working.

33. In order to ensure that Mr. Datta would have an office in White Plains, Mr. Jendras offered to work from his home in New Fairfield, Connecticut and relinquish his office. To that end, Mr. Jendras completed and submitted the requisite Company telecommuting paperwork.

34. In or about February 2011, Mr. Datta commenced working in AboveNet's White Plains office and took Mr. Jendras' office as his own office.

35. Shortly thereafter, on February 18, 2011, Mr. Jendras received the Stock Award agreement memorializing the January 2011 award. Mr. Jendras executed the agreement and returned it to AboveNet on March 2, 2011.

36. On or about March 21, 2011, Mr. Datta suggested to Mr. Jendras that he should consider a voluntary separation from AboveNet. Mr. Jendras did not accept the proposed voluntary separation suggested by Mr. Datta and advised Mr. Datta that he intended to continue his employment with the Company.

37. On or about March 24, 2011, Mr. Datta telephoned Mr. Jendras and indicated that the Company had decided to modify the terms of January 2011 Award by removing the provision of the Agreement that provided for an automatic vesting of unvested stock if Mr. Jendras were terminated without cause.

38. Shortly thereafter, Mr. Jendras received a proposed modified version of the Stock Award Agreement that had previously been executed by him. The modified version purported to allow for forfeiture of any unvested stock granted by the January 2011 award even if Mr. Jendras was terminated without cause.

39. Mr. Jendras refused to sign the modified version of the terms of the January 2011 award since he had never consented to change the terms of the previous Award issued by the Compensation Committee.

40. The Company's public filings have all confirmed that the terms of the January 2011 Award are the terms contained in the form of Agreement delivered to Mr. Jendras on February 18, 2011 and signed and returned by Mr. Jendras to the Company on March 2, 2011.

41. In the ensuing months, Mr. Jendras continued to perform his duties and discharge his responsibilities. He continued to supervise employees and addressed any operations issues including network outages if any arose at customer sites or on the AboveNet Network throughout the country.

42. Mr. Jendras also arranged to be available for weekly staff calls scheduled by Mr. Datta but almost all of them were cancelled by Mr. Datta without explanation.

43. On July 11, 2011, Mr. Jendras returned a phone call from Mr. Datta and Mr. Datta informed Mr. Jendras that he was terminating Mr. Jendras for cause because of

8

the purported failure to go to AboveNet's White Plains office when Mr. Datta was in attendance.

44. On that same day, Mr. Datta sent a letter confirming the termination of Mr. Jendras and purporting that termination was made pursuant to Section 6(c) of the Employment Agreement, which only permits termination for cause on the basis of material misconduct in, or material neglect of, the performance of material duties and responsibilities, or the Employee's violation of any reasonable specific directions of a Superior.

## COUNT I

### (Breach of Contract)

45. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth at length herein.

46. The termination of Mr. Jendras' employment was without cause since he did not engage in material misconduct in or materially neglect the performance of material duties and did not violate any reasonable specific directions of a Superior.

47. The sole proffered justification for the contention of Mr. Datta and AboveNet that Mr. Jendras was terminated with cause was the claim that Mr. Jendras was not present in White Plains when Mr. Datta was working in the White Plains office. However, Mr. Jendras had previously spoken to Mr. Datta when he relinquished his office and had indicated to Mr. Datta that he would be available to meet in White Plains whenever requested to do so. Mr. Datta approved the arrangement, took Mr. Jendras' office as his own and did not object to Mr. Jendras working outside of the White Plains office. Additionally, Mr. Jendras subsequently came to the White Plains office on those

9

occasions when meetings were called and was able to discharge all material responsibilities when working outside of the White Plains office.

48.     Although termination of Mr. Jendras was without cause, AboveNet has failed and refused to honor the terms of the Employment Agreement and refuses to pay compensation due and owing to Mr. Jendras as a consequence of his termination without cause as well as health and welfare benefits.

49.     As a result of AboveNet's breach of the Employment Agreement, Mr. Jendras has sustained damages in an amount to be proven at trial but believed to be no less than $423,300.

## COUNT II

### (Specific Performance)

50.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth at length herein.

51.     Under the terms of the September 8, 2008 Award, all unvested shares made pursuant to the Award vest immediately upon termination of Mr. Jendras without cause.

52.     By reason of the termination of Mr. Jendras' employment without cause, 42,000 shares of AboveNet awarded to Mr. Jendras' pursuant to the September 2008 Award have immediately vested.

53.     AboveNet has failed to honor the terms of the September 8, 2008 Stock Award Agreement and, among other things, failed and refused to deliver the shares of AboveNet stock that vested automatically pursuant to the September 8, 2008 Stock Award Agreement upon his termination.

10

54. Plaintiff has no adequate remedy at law.

## COUNT III

### (Breach of Contract)

55. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth at length herein.

56. By reason of the failure of AboveNet to deliver the 42,000 shares of AboveNet awarded to Mr. Jendras' pursuant to the September 2008 Award, Mr Jendras has sustained the loss of the economic benefit of ownership of the stock which was valued at 69 dollars ($69.00) per share when Mr. Jendras' employment was terminated.

57. By reason of AboveNet's breach of the September 8, 2008 Stock Award Agreement, Mr. Jendras has sustained damages equal to the ensuing loss of value of the 42,000 shares of stock which was valued at $2,898,000.00 at the time the shares vested.

## COUNT IV

### (Specific Performance)

58. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth at length herein.

59. Under the terms of the December 20 Award, all unvested shares made pursuant to the Award vest immediately upon termination of Mr. Jendras without cause.

60. By reason of the termination of Mr. Jendras' employment without cause, 3738 shares of AboveNet awarded to Mr. Jendras' pursuant to the December 20, 2010 Award have immediately vested.

61. AboveNet has failed to honor the terms of the December 20, 2010 Stock Award Agreement and, among other things, failed and refused to deliver the shares of

AboveNet stock that vested automatically pursuant to the December 20, 2010 Stock Award Agreement upon his termination.

62. Plaintiff has no adequate remedy at law.

## COUNT V

### (Breach of Contract)

63. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth at length herein.

64. By reason of the failure of AboveNet to deliver the 3738 shares of AboveNet awarded to Mr. Jendras' pursuant to the December 2010 Award, Mr Jendras has sustained the loss of the economic benefit of ownership of the stock which was valued at 69 dollars ($69.00) per share when Mr. Jendras' employment was terminated.

65. By reason of AboveNet's breach of the December 20, 2010 Stock Award Agreement, Mr. Jendras has sustained damages equal to the ensuing loss of value of the 3738 shares of stock which was valued at $257,922.00 at the time the shares vested.

## COUNT VI

### (Specific Performance)

66. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth at length herein.

67. Under the terms of the January 25 Award, all unvested shares made pursuant to the Award vest immediately upon termination of Mr. Jendras without cause.

68. By reason of the termination of Mr. Jendras' employment without cause, 21,000 shares of AboveNet awarded to Mr. Jendras' pursuant to the January 25, 2011 Award have immediately vested.

69. AboveNet has failed to honor the terms of the January 25, 2011 Stock Award Agreement and, among other things, failed and refused to deliver the shares of AboveNet stock that vested automatically pursuant to the January 25, 2011 Stock Award Agreement upon his termination.

70. Plaintiff has no adequate remedy at law.

## COUNT VII

### (Breach of Contract)

71. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth at length herein.

72. By reason of the failure of AboveNet to deliver the 21,000 shares of AboveNet awarded to Mr. Jendras' pursuant to the January 2011 Award, Mr Jendras has sustained the loss of the economic benefit of ownership of the stock which was valued at 69 dollars ($69.00) per share when Mr. Jendras' employment was terminated.

73. By reason of AboveNet's breach of the January 25, 2011 Stock Award Agreement, Mr. Jendras has sustained damages equal to the ensuing loss of value of the 21,000 shares of stock which was valued at $1,449,000.00 at the time the shares vested.

## COUNT VIII

### (Attorney's fees)

74. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth at length herein.

75. Section 22 of the Employment Agreement provides in relevant part:

Each party to this Agreement will pay his costs (including legal fees) in connection with enforcement of this Agreement. **However, if the Employee prevails on such issues, the Company will reimburse the**

**Employee for all reasonable costs, including legal fees that the Employee incurs.** (emphasis supplied).

76.     In accordance with Section 22 of the Employment Agreement, Plaintiff is entitled to recover all of his attorney's fees and reasonable costs in prosecuting this action.

WHEREFORE, Plaintiff demands judgment against the Defendant as follows:

a)     On the first cause of action in an amount to be determined at trial but believed to be no less than $423,300;

b)     On the second cause of action granting specific performance and compelling the Defendant to perform its obligations under the September 8, 2008 Stock Award Agreement and immediately deliver 42,000 shares of AboveNet stock to Plaintiff in accordance with that agreement;

c)     On the third cause of action in an amount to be proven at trial but believed not to exceed $2,898,000.00

d)     On the fourth cause of action granting specific performance and compelling the Defendant to perform its obligations under the December 20, 2010 Stock Award Agreement and immediately deliver 3738 shares of AboveNet stock to the Plaintiff in accordance with that Agreement

e)     On the fifth cause of action in an amount to be proven at trial but believed not to exceed $257,922.00.

f)     On the sixth cause of action granting specific performance and compelling the Defendant to perform its obligations under the January 25, 2011 Stock Award Agreement and immediately deliver 21,000 shares of AboveNet stock to Plaintiff in accordance with that agreement;

g)  On the seventh cause of action in an amount to be proven at trial but believed not to exceed $1,449,000.

h)  On the eighth cause of action awarding Plaintiff attorney's fees and reasonable costs incurred in prosecuting this action;

i)  Punitive Damages in an amount to be determined at trial

j)  Such other and further relief as the court may deem just and proper.

### DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Plaintiff demands trial by jury in this action of all issues so triable.

Dated: White Plains, New York
       August 3, 2011

                                              Yours, etc.,

                                              KURZMAN EISENBERG CORBIN
                                              & LEVER, LLP

                                              By: _____
                                              Fred D. Weinstein
                                              A Member of the Firm
                                              Attorneys for Plaintiff
                                              One North Broadway
                                              White Plains, New York 10601

| | |
|---|---|
| DOUGLAS JENDRAS, | |
| | Plaintiff, |
| -against- | |
| ABOVENET, INC. | |
| | Defendant. |

## COMPLAINT AND JURY DEMAND

KURZMAN EISENBERG CORBIN & LEVER, LLP

Attorney(s) for

Plaintiff

*Office and Post Office Address, Telephone*
ONE NORTH BROADWAY
WHITE PLAINS, NEW YORK 10601
(914) 285-9800

To

Service of a copy of the within is hereby admitted

Dated: ....................................

................................................................

Attorney(s) for

PLEASE TAKE NOTICE:

☐ NOTICE OF ENTRY

that the within is a *(certified) true copy of a*
duly entered in the office of the clerk of the within named court on

☐ NOTICE OF SETTLEMENT

that an order
will be presented for settlement to the HON.                         of which the within is a true copy
within named Court, at                                                  one of the judges of the
on                         at                         M.
Dated,
                                                                 Yours, etc.

To                                                    KURZMAN EISENBERG CORBIN & LEVER, LLP
                                                      Attorneys for
Attorney(s) for
                                                      *Office and Post Office Address, Telephone*
                                                      ONE NORTH BROADWAY
                                                      WHITE PLAINS, NEW YORK 10601
                                                      (914) 285-9800